UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Corey Donovan

   v.                                         Case No. 22-cv-215-JL

Joseph P. Mahoney, III, et al.[1]

**REPORT AND RECOMMENDATION**

Before the court is prisoner Corey Donovan's Complaint (Doc. No. 1) and his response (Doc. No. 5) to the October 20, 2022 Show Cause Order. Mr. Donovan's pleadings (Doc. Nos. 1, 5) are before this court for preliminary review, pursuant to 28 U.S.C. § 1915A and LR 4.3(d)(1).

**Preliminary Review Standard**

This court conducts a preliminary review of complaints filed by prisoners seeking relief from government agents. See LR 4.3(d)(1); see also 28 U.S.C. § 1915A. Claims may be dismissed sua sponte, if the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint

---

[1] The defendants named in the Complaint are: Andover Police Department Chief Joseph P. Mahoney, III; Danbury Police Department ("DPD") Chief David Suckling; DPD Sgt. Spencer Marvin; (former) Hill Police Department Chief Andrew J. Williamson; and the Towns of Andover, Danbury, and Hill, New Hampshire.

fails to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915A(b); LR 4.3(d)(1)(A).  In considering whether the complaint states a claim, the court determines whether, stripped of legal conclusions, and with all reasonable inferences construed in the plaintiff's favor, the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  The court construes pro se pleadings liberally.  See De Paula Vieira v. De Souza, 22 F.4th 304, 311 (1st Cir. 2022).

## Background

The plaintiff asserts that he was arrested without a warrant on June 19, 2019 at a gas station in Andover, New Hampshire, and that the arresting officers lacked probable cause.  The plaintiff further asserts that the arresting officers used excessive force during the arrest, and that an ensuing police cover-up involving fabricated testimony gave rise to a malicious prosecution.  The plaintiff alleges that these incidents violated his rights under the Fourth and Fourteenth Amendments.  The plaintiff seeks damages under 42 U.S.C. § 1983 and state tort law, naming the arresting officers and their municipal employers as defendants (specifically, Andover Police

Department ("APD") Chief Joseph P. Mahoney, III; Danbury Police Department ("DPD") Chief David Suckling; DPD Sgt. Spencer Marvin; (former) Hill Police Department ("HPD") Chief Andrew J. Williamson; and the Towns of Andover, Danbury, and Hill, New Hampshire).

On January 13, 2020, a jury in Merrimack County Superior Court convicted Mr. Donovan of a single felony count of drug possession and acquitted him of multiple charges of attempting to take a gun from a law enforcement officer, being a felon in possession of a dangerous weapon, and resisting arrest, arising from the June 19, 2019 incident.  Mr. Donovan appealed his drug possession conviction, and the New Hampshire Supreme Court ("NHSC") reversed his conviction and remanded the matter, upon finding that the arresting officers had seized Mr. Donovan in violation of his rights under the N.H. Constitution, and that the trial court had erred in denying Mr. Donovan's motion to suppress the evidence the officers acquired after they seized him.  See State v. Donovan, 175 N.H. 356, 287 A.3d 756 (N.H. 2022).  The State nolle prossed the remanded drug possession charge.  See State v. Donovan, No. 217-2019-cr-00584 (N.H. Super., Merrimack Cty., Dec. 16, 2022); see also Doc. No. 5-1.

## **Claims**

Construed liberally in light of the plaintiff's pro se status, the complaint and its addendum assert the following claims under 42 U.S.C. § 1983 and state law:

1. On June 19, 2019, the arresting officers violated Mr. Donovan's Fourth Amendment right not to be subjected to a warrantless, unreasonable search or seizure without probable cause, rendering the arresting officers liable under 42 U.S.C. § 1983, in that:

    a. The arresting officers unreasonably and unjustifiably prolonged their stop or seizure of Mr. Donovan without a reasonable articulable suspicion of criminal activity, when they took away his identification, blocked his vehicle, and separated him from his passenger; and

    b. The arresting officers lacked a warrant or probable cause to arrest Mr. Donovan for possessing a machete, which Sgt. Marvin took from Mr. Donovan's car after Mr. Donovan had been seized in violation of the state constitution.

    c. HPD Chief Williamson subjected Mr. Donovan to a warrantless unreasonable search of his person, in that, after Sgt. Marvin had already been pat-frisked Mr. Donovan, Chief Williamson searched Mr. Donovan's pockets, without having any reasonable belief that Mr. Donovan could still be armed and dangerous.

2. On June 19, 2019, the arresting officers violated Mr. Donovan's Fourth Amendment rights by using excessive force during his arrest, rendering each arresting officer liable under 42 U.S.C. § 1983, in that:

    a. Each arresting officer used excessive force or excessively forceful restraints upon Mr. Donovan when he was not resisting, including the use of excessively tight handcuffs; kicks, strikes, and blows to Mr. Donovan's feet and body; the application of a vascular neck restraint; drive-

4

      stunning or tasing Mr. Donovan multiple times; and using pepper spray;

    b. Each arresting officers failed to prevent the use of excessive force by the other officers, despite having an awareness of that use of excessive force and a realistic opportunity to intervene to stop it; and

    c. Each arresting officer was instrumental in assisting the other officers' use of excessive force by placing Mr. Donovan in a vulnerable position with respect to those other officers.

3. On or about June 19, 2019, the arresting officers fabricated evidence and prepared false reports, which were used as the basis for Mr. Donovan's prosecution, resulting in his detention pursuant to legal process without probable cause, in violation of the Fourth and Fourteenth Amendments, rendering those defendants liable under 42 U.S.C. § 1983, in that:

    a. Chief Mahoney fabricated evidence that Mr. Donovan had tried to take Chief Mahoney's gun;

    b. Sgt. Marvin fabricated evidence that Mr. Donovan was reaching for Sgt. Marvin's gun;

    c. Sgt. Marvin fabricated evidence that Mr. Donovan took Sgt. Marvin's microphone; and

    d. Chief Mahoney approved the falsified statements and reports upon which the defendants had recommended Mr. Donovan's prosecution, knowing that those statements or reports were false.

4. On or about June 19, 2019, the arresting officers engaged in a civil rights conspiracy, giving rise to their liability under 42 U.S.C. § 1983, in that:

    a. They took actions to cover up their false arrest of Mr. Donovan and their use of excessive force; and

    b. They caused Mr. Donovan to be detained pursuant to legal process, in violation of Mr. Donovan's Fourth and Fourteenth Amendment rights, by –

      i. Discussing the arrest and use-of-force incident with one another, and with witnesses, before writing their reports and statements;

     ii. Including fabricated statements in their police reports, which they knew to be false; and

    iii. Causing those false statements to be submitted to the prosecutor so that Mr. Donovan would be prosecuted, in the absence of probable cause, for charges upon which he was later acquitted.

5. The Towns of Andover, Danbury, and Hill are liable under 42 U.S.C. § 1983 for the arresting officers' civil rights conspiracy, and other violations of Mr. Donovan's Fourth and Fourteenth Amendment rights, under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), in that:

   a. Each Town had a custom or practice of not requiring the preparation of after-the-fact reports concerning the use of force;

   b. Each Town failed to discipline the arresting officers for failing to prepare reports concerning the use of force;

   c. Each Town failed to conduct an after-the-fact investigation of the arresting officers' alleged use of excessive force in arresting Mr. Donovan;

   d. The Town of Hill hired HPD Chief Anderson as HPD police chief after his name appeared on the "Laurie List" in August 2018; and

   e. The Town of Danbury and two DPD officers (not named as defendants in this case) were defendants in a lawsuit filed by a person who is not a party in this case, who claimed that he had been falsely arrested and maliciously prosecuted in violation of his federal constitutional rights, see Giroux v. Town of Danbury, No. 1:06-cv-250 (D.N.H.).

>    6. On June 19, 2019, the arresting officers subjected Mr. Donovan to excessive force during his arrest, resulting in Mr. Donovan's severe emotional distress and physical injuries:
>
>       a. Rendering each of the arresting officers liable under state law for the torts of (i) assault, (ii) battery, (iii) negligent infliction of emotional distress, and (iv) intentional infliction of emotional distress; and
>
>       b. Rendering their municipal employers -- the Towns of Andover, Danbury, and Hill, liable under state law for the arresting officers' tortious conduct on a theory of respondeat superior.

## Discussion

**I. Federal Claims**

    **A. Fourth Amendment – Search and False Arrest (Claim 1)**

        **1. Stop and Seizure (Claim 1(a))**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). But such a "Terry stop" must be both justified and commensurately limited. Hiibel v. Sixth Jud. Dist. Ct., 542 U.S. 177, 185 (2004).

7

> A <u>Terry</u> stop is a brief detention that permits a police officer to, "in appropriate circumstances and in an appropriate manner[,] approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."
>
> For a <u>Terry</u> stop to comply with the Fourth Amendment, the officer must have "reasonable suspicion that the person is or has been engaged in criminal activity." This assessment is based on the "totality of the circumstances," which requires that the detaining officer have a "'particularized and objective basis' for suspecting legal wrongdoing." . . . [T]his objective standard asks courts to "focus not on what the officer himself believed but, rather, on what a reasonable officer in his position would have thought." . . . "[T]his process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'"

[United States v. Harrington](), 56 F.4th 195, 201 (1st Cir. 2022) (internal citations omitted).

In Mr. Donovan's direct appeal, the NHSC concluded that under the New Hampshire Constitution, the officers lacked the requisite reasonable suspicion to validate their seizure of Mr. Donovan, when they blocked his car, took away his license, and separated him from his passenger. Although that NHSC ruling did not address whether the same conduct violated Mr. Donovan's Fourth Amendment rights, this court cannot conclude that Mr. Donovan's <u>Terry</u> stop claim (Claim 1(a)) fails to state a claim upon which relief can be granted under § 1983. Accordingly, in

8

the Order issued this date the court has directed service of Claim 1(a) upon the arresting officers.

### 2. Machete (Claim 1(b))

In Claim 1(b), as identified by this court, Mr. Donovan has asserted that he was subjected to a warrantless arrest, without probable cause, in violation of the Fourth Amendment, in that he was arrested for being a felon in possession of a dangerous weapon, N.H. Rev. Stat. Ann. ("RSA") 159:3, for having what the NHSC characterized as "a large, sheathed machete between the driver's seat and the door." Donovan, 175 N.H. at 358, 287 A.3d at 759. Mr. Donovan asserts that the machete was a tool, not a weapon. The jury acquitted him of the RSA 159:3 charge. Doc. No. 1, at 9-10.

"Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983." Dollard v. Whisenand, 946 F.3d 342, 353 (7th Cir. 2019); see also Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009).

> A police officer has probable cause when, at the time of the arrest, the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."

Holder, 585 F.3d at 504.

In general, arresting officers do not have a duty to investigate to determine if there could be a viable defense to prosecution under state law, once it appears that there is probable cause for an arrest, see Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 11 (1st Cir. 2004). Probable cause "does not require officers to establish the elements of the offense with a level of certainty as though trial-level proof must exist at the side of the road." United States v. Brooks, 982 F.3d 1177, 1180 (8th Cir. 2020).

Here, Mr. Donovan concedes that the officers knew he was a federal probationer who had a felony record when they approached his car. See Doc. No. 1, at 6-7. A prudent police officer of reasonable caution, finding a large machete near the driver's seat of a car driven and owned by a person known to be a felon, under the circumstances, could believe that the driver had committed the offense of being a felon in possession of a dangerous weapon. And the jury's verdict to the contrary does not vitiate the probable cause that existed at the time of the arrest. See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979) ("the mere fact that [a defendant] is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest"). Accordingly, the district judge should dismiss

Mr. Donovan's Fourth Amendment claim arising from his possession of the machete (Claim 1(b)).

### 3. Chief Williamson's Search (Claim 1(c))

Mr. Donovan has alleged that after he had been frisked for weapons by DPD Sgt. Marvin, HPD Chief Williamson searched his pockets, which Mr. Donovan asserts was not justified by any reasonable concern for safety.  At the point at which HPD Chief Williamson searched Mr. Donovan's pockets, however, the arresting officers had probable cause to arrest him for being a felon in possession of a dangerous weapon.  Therefore, "they could lawfully search his person incident to an arrest." United States v. Mulkern, 49 F.4th 623, 632 (1st Cir. 2022).  As the search of Mr. Donovan's pockets was a search incident to an arrest based on probable cause, Chief Williamson's search of Mr. Donovan did not violate the Fourth Amendment.  Accordingly, the district judge should dismiss Claim 1(c).

### B.   Fourth Amendment – Excessive Force (Claim 2)

To state a Fourth Amendment claim for the use of excessive force incident to an arrest, Mr. Donovan must show that the arresting officers' actions were objectively unreasonable, in light of the facts and circumstances known to them at the time

11

of the use of force. See Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007); see also Graham v. Connor, 490 U.S. 386, 397 (1989). Factors relevant to the objective reasonableness of the force used include the "'severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.'" Jennings, 499 F.3d at 11 (citation omitted). Additionally, liability may arise in circumstances where nonparticipating, onlooking officers were aware of the use of excessive force by another officer, had a reasonable opportunity to prevent the use of excessive force, but failed to do so, and in circumstances where the onlooking officer is instrumental in assisting the attacking officer to place the victim in a vulnerable position. See Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43, 51-52 (1st Cir. 2005); Sheffield v. Pieroway, 361 F. Supp. 3d 160, 169 (D. Mass. 2019).

    The allegations summarized above in Claims 2(a)-(c) state Fourth Amendment excessive force claims against the arresting officers upon which relief can be granted under 42 U.S.C. § 1983. Accordingly, in the Order issued this date, this court has directed service of those claims against each arresting officer.

12

## C. **Malicious Prosecution – Fabricated Evidence (Claim 3)**

"[T]he mere filing of [] false police reports, by themselves and without more, d[oes] not create a right of action in damages." Landrigan v. City of Warwick, 628 F.2d 736, 745 (1st Cir. 1980). The court's analysis of a claim of malicious prosecution founded upon allegations of false police reports must focus on the consequences of the false statements. Id.

> [I]n most cases, the neutral magistrate's determination that probable cause exists for the individual's arrest is an intervening act that could disrupt any argument that the defendant officer had caused the continued unlawful seizure. . . . But if a plaintiff can overcome this causation problem and demonstrate that law enforcement officers were responsible for his continued, unreasonable pretrial detention, the plaintiff has stated a constitutional injury that may be vindicated through a § 1983 action.

Hernandez-Cuevas v. Taylor, 723 F.3d 91, 100 (1st Cir. 2013); see also Manuel v. City of Joliet, 580 U.S. 357, 368 (2017).

> To prevail on a claim of malicious prosecution under federal law, the plaintiff must "'establish that: the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'" Pagán-González v. Moreno, 919 F.3d 582, 601 (1st Cir. 2019) (quoting Hernandez-Cuevas, 723 F.3d at 101)). . . . Police officers may be deemed to have caused the seizure, and remain liable to a wrongfully indicted defendant, when they have "(1) 'lied to or misled the prosecutors'; (2) 'failed to disclose exculpatory evidence'; or (3) 'unduly pressured the prosecutor to seek the indictment.'"

13

Arias v. City of Everett, No. 19-10537-JGD, 2019 U.S. Dist. LEXIS 209532, at *31-32, 2019 WL 6528894, at *12 (D. Mass. Dec. 4, 2019) (citation and footnote omitted).

The facts alleged in the complaint, construed liberally, state a Fourth Amendment malicious prosecution claim upon which relief can be granted, arising from the officers' knowing and intentional preparation, submission, and/or approval of allegedly falsified police reports, and the alleged impact of those reports on the plaintiff's prosecution, as to each charge upon which he was acquitted. Accordingly, in the Order issued this date, the court has directed the defendants named in Claim 3 to file an answer to the Fourth and Fourteenth Amendment malicious prosecution claims.

### D. Civil Rights Conspiracy (Claim 4)

#### 1. Cover Up (Claim 4(a))

> [O]fficers involved solely in the cover up of another officer's assault and battery of a suspect, without any evidence of a conspiratorial agreement prior to the incident, cannot be held liable for the original tort through a civil rights conspiracy.

Sanchez v. Foley, 972 F.3d 1, 12 (1st Cir. 2020) (citing Aubin v. Fudala, 782 F.2d 280, 286 (1st Cir. 1983) (officers' after-the-fact acts to conceal a fatal shooting did not sufficiently demonstrate conspiratorial agreement to deprive shooting victim

14

of his constitutional rights)); see also Landrigan, 628 F.2d at 742 (officers who helped cover up another officer's assault and battery were not liable for assault and battery, because "the conspiracy in which all were allegedly involved did not commence until after plaintiff's leg was broken"); cf. Santiago v. Fenton, 891 F.2d 373, 389 (1st Cir. 1989) (jury could reasonably infer that officers conspired to arrest the plaintiff, in violation of his Fourth Amendment rights, based on evidence of "discussions between the officers" before the arrest and jury's possible inference that officers had fabricated reason for arrest).

Stripped of conclusory statements and speculation about the conspiracy and cover-up, the allegations in the complaint fail to state facts suggesting any conspiratorial agreement before the allegedly unconstitutional seizure of Mr. Donovan and the alleged use of excessive force incident to his arrest. Therefore, the plaintiff has failed to state a civil rights conspiracy claim upon which relief can be granted under § 1983 as to the use of excessive force and the Terry stop. Accordingly, the district judge should dismiss Claim 4(a).

### **2. Malicious Prosecution Conspiracy (Claim 4(b))**

The facts alleged in the Complaint, as summarized in Claim 3(b), state a claim upon which relief can be granted as to the existence of a civil rights conspiracy among the arresting officers, which resulted in the malicious prosecution of Mr. Donovan, giving rise to the officers' potential liability under 42 U.S.C. § 1983. Accordingly, the Order this date directs those individual defendants to answer Claim 4(b).

### E.   *Monell* **Claims of Municipal Liability (Claim 5)**

Claim 5 summarizes the allegations upon which Mr. Donovan bases his claims of the defendant Towns' liability under § 1983 for the conduct of each defendant police officer. Under § 1983, a city or municipality cannot be held liable under 42 U.S.C. § 1983 on a theory of respondeat superior or vicarious liability; the municipality itself must proximately cause the constitutional injury, through the promulgation (or tacit approval) of a municipal policy or custom, which must be the moving force behind the constitutional violation. See Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997); Monell, 436 U.S. at 690-91. In other words, the plaintiff must establish "that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between

the municipal action and the deprivation of federal rights." Brown, 520 U.S. at 404.

> Liability will attach to the municipal employer where its failure to properly train its officers "amounts to deliberate indifference to the rights of persons with whom the police come into contact," and where a specific deficiency in training is the "moving force" behind a constitutional injury.

Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002) (citations omitted).

The allegations in Mr. Donovan's pleadings include the Town of Hill's hiring of its Chief of Police after he had placed on the Laurie list,[2] and the Towns' policies as to after-the-fact investigations and reports. Such factual allegations, taken as true, might give rise to a claim of negligence, but fail to demonstrate deliberate indifference. The Complaint further alleges that a third party more than ten years before had sued the Town of Danbury and several of its officers who are not parties here, in a case where no defendant was found to be liable, see Apr. 9, 2008 Jt., Giroux, No. 1:06-cv-250-PB (D.N.H. Apr. 9, 2008) (ECF No. 68). None of the allegations in the

---

[2] The New Hampshire Attorney General's Office "currently maintains a list of police officers who have engaged in misconduct reflecting negatively on their credibility or trustworthiness. The list, formerly known as the 'Laurie List,' is now called the Exculpatory Evidence Schedule (EES)." Doe v. Att'y Gen., 175 N.H. 349, 351 n.1, 287 A.3d 713, 715 n.1 (N.H. 2022) (citation omitted).

pleadings state an actionable § 1983 claim against the municipalities upon which relief can be granted. See, e.g., Landrigan, 628 F.2d at 747 (employment of tortfeasor, without more, is "an insufficient predicate for section 1983 liability"); see also Kingsley v. Hendrickson, 576 U.S. 389, 396 (2015) ("'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process'" (emphasis in original, citation omitted)).

## II.  State Law Tort Claims (Claim 6)

Claim 6 summarizes the allegations underlying Mr. Donovan's assertion of tort claims, arising under state law, upon which relief can be granted. Those claims are within this court's jurisdiction under 28 U.S.C. § 1367. Accordingly, in the Order issued this date, the court has directed service of Claims 6(a) and 6(b) as to each arresting officer, as well as against the officers' municipal employers, under a theory of respondent superior.

## Conclusion

For the foregoing reasons, the district judge should:

1. Dismiss Claims 1(b), 1(c), and 4(a), as to the individual police officers named as defendants, for failure to state a claim upon which relief can be granted; and

2. Dismiss the claims asserting municipal liability under 42 U.S.C. § 1983, as to the Towns of Hill, Andover, and Danbury (Claim 5), for failure to state a claim upon which relief can be granted.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. The objection period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised in the written objections "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'" Id. (citations omitted).

_____
Andrea K. Johnstone
United States Magistrate Judge

April 13, 2023

cc: Corey Donovan, pro se